UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| OSF HEALTHCARE SYSTEM an Illinois not for profit corporation d/b/a SAINT FRANCIS MEDICAL CENTER, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 1:16-cv-1052-SLD-JEH |
| MATCOR METAL FABRICATION (ILLINOIS) INC and MATCOR METAL FABRICATION (WELCOME) INC GROUP BENEFIT PLAN, | ) ) ) ) ) ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Plaintiff OSF's Motion to Reconsider, ECF No. 15, which asks the Court to reconsider its March 9, 2017 Order granting Defendants Matcor Metal Fabrication (Illinois) Inc. and Matcor Metal Fabrication (Welcome) Inc. Group Benefit Plan's Motion to Dismiss, ECF No. 13. For the following reasons, the motion is DENIED.

## BACKGROUND

Plaintiff OSF Healthcare System ("OSF") is a healthcare services provider in the state of Illinois. OSF provided medical care to R.M.W., a minor child of a participant in the Matcor Metal Fabrication (Welcome) Inc. Group Benefit Plan ("Matcor" or "the Plan"), at one of its hospitals, Saint Francis Medical Center, on or around September 24, 2012 through October 7, 2012. The cost of the provided medical attention totaled $113,578.89.

The Plan paid $31,570.34 toward the account, leaving a balance of $82,008.55. The Health Benefit Summary Plan Description, ("Benefit Summ."), Compl., Ex. B, ECF No. 1-3,

1

contains a section entitled "Procedures for Submitting Claims," which states that "[m]ost providers will accept assignment and coordinate payment directly with the Plan on the Covered Person's behalf. If the provider will not accept assignment or coordinate payment directly with the Plan, then the Covered Person will need to send the claim . . . in order to receive reimbursement." Benefit Summ. 94.

OSF alleges that it appealed Matcor's adverse benefit determination and refusal to pay seven times: February 14, 2013, May 8, 2013, July 25, 2013, September 5, 2013, January 12, 2015, July 22, 2015, and August 25, 2015. The Plan denied these appeals.

On February 10, 2016, OSF filed its complaint pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1), against Matcor, seeking benefits owed under the Plan—meaning the remaining balance of the billed services— plus courts costs and attorneys' fees. Matcor filed its Motion to Dismiss, ECF No. 4, on May 4, 2016, arguing that OSF failed to exhaust the Plan's administrative remedy, a prerequisite to bringing suit under the statute. Specifically, Matcor argued that OSF did not comply with the appeals procedure in the Plan, which required a provider to first become authorized as a personal representative of the Plan participant, and therefore its attempts to appeal the adverse benefit determination were ineffective. Mot. Dismiss ¶ 5. OSF argued that, due to the fact that it has already received direct payment from Matcor under the Plan, it qualified as a beneficiary under ERISA, and therefore had ERISA appeal rights, whether or not it followed Plan procedures to become a personal representative. OSF also argued that the Plan did not provide meaningful review procedures, as required by ERISA, so any argument made by Matcor regarding OSF's failure to exhaust its administrative remedies should be moot. Pl.'s Mem. Obj. Def.'s Mot. Dismiss 9–10, ECF No. 9.

In its March 9, 2017 Order, the Court granted the Motion to Dismiss, finding that OSF had standing to bring suit as a beneficiary under ERISA but had not become a personal representative and did not have the right to appeal an adverse benefit determination. The Court also concluded that the Plan provided a "reasonable opportunity" to appeal guaranteed by 29 C.F.R. § 2560.503-(1)(h)(1) and, based on the facts and arguments presented, OSF had not sufficiently alleged facts showing that administrative exhaustion requirement should be excused. Mar. 9, 2017 Order 7–9. OSF now argues that the Court should reconsider its decision because as an ERISA beneficiary, it has an "unqualified right to appeal" the adverse benefit determination. Pl.'s Mem. Supp. Mot. Reconsider 5, ECF No. 16. It further argues that Matcor waived any argument that OSF failed to exhaust administrative remedies because it responded to OSF's appeals and did not provide OSF with the information it needed to perfect an appeal under the Plan's terms. *Id.* at 8–9; 15.

**DISCUSSION**

**I.     Legal Standard for Motion to Reconsider Under FRCP 59(e)**

Reconsideration of a judgment under Rule 59(e) may be granted only if the movant presents newly discovered evidence or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "A 'manifest error of law' occurs when the district court commits a 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (quoting *Oto*, 224 F.3d at 606). A court may reconsider where it has "patently misunderstood a party. . . or has made an error not of reasoning but of apprehension," but motions to reconsider should be "rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing,*

3

*Inc.*, 99 F.R.D. 99, 101 (E.D. Va 1983)). Further, a Rule 59(e) motion cannot be used to introduce evidence that could have been presented prior to the entry of final judgment. *Oto,* 224 F.3d at 606.

**II.    Analysis**

OSF asks the Court to reconsider its March 9, 2017 Order dismissing the suit. OSF argues that "an ERISA [beneficiary] has an unqualified right to appeal an adverse benefit determination by an ERISA governed health plan." Pl.'s Mem. Supp. Mot. Reconsider 5. ERISA provides a right of action "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). ERISA defines a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002. Determining beneficiary status is important because ERISA requires plans to provide certain notices and procedures to beneficiaries. 29 U.S.C. §§ 1133(1)–(2); 1135; *see* 29 C.F.R. § 2560.503-1(a)–(b).

OSF argued in its response to the Motion to Dismiss that its beneficiary status stemmed from Matcor's partial payment of the billed services directly to OSF: in paying the benefits directly to the hospital, Matcor was "acknowledging and creating an assignment." Pl.'s Mem. Obj. Def.'s Mot. Dismiss 5. The Plan allowed, but did not require, such direct payments to providers: "Most providers will accept assignment and coordinate payment directly with the Plan on the Covered Person's behalf. If the provider will not accept assignment or coordinate payment directly with the Plan, then the Covered Person will need to send the claim . . . in order to receive reimbursement." Benefit Summ. 94. Because the Plan allowed for such payments, and did in fact pay OSF such a payment, OSF argues that it was entitled to a benefit by the terms of

4

the Plan, and therefore is a beneficiary. Pl.'s Mem. Obj. Def.'s Mot. Dismiss 6. OSF argues it is entitled to notice and appeal rights and a direct right of action under ERISA and that the Plan's appeals process is "irrelevant" to it because it is a provider with beneficiary status; it argues that the appeals process only applies to providers who are "not otherwise ERISA claimants (beneficiaries)." Pl.'s Mem. Supp. Mot. Reconsider 8. In other words, OSF argues it has the same status as a Covered Person under the Plan.

This Court relied on the Seventh Circuit's decision in *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991) to conclude that OSF was a beneficiary. *See* Mar. 9, 2017 Order 5. In *Kennedy*, a medical provider submitted a bill for services and the insurance company refused to pay. The provider sued pursuant to an assignment signed by his patient. *Kennedy*, 924 F.2d at 699. The insurance company argued the provider was not permitted to sue under 29 U.S.C. § 1132(a)(1)(B) because it was not a participant or beneficiary and the insurance policy prohibited assignments without the insurance company's consent.

> ERISA defines a "beneficiary" as "a person designated by a participant ... who is or may become entitled to a benefit" under the plan. 29 U.S.C. § 1002(8). [The patient], unquestionably a "participant" as § 1002(7) uses that term, designated Kennedy as the person to receive her benefits. That makes Kennedy a "beneficiary". To the extent doubt remains, *Firestone* [*Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)] tells us to treat as a "participant" for jurisdictional purposes anyone with a colorable claim to benefits, 489 U.S. at 117–18, 109 S.Ct. at 957–58, an approach equally applicable when a person claiming to be a "beneficiary" files suit. Kennedy has a colorable claim.

*Kennedy*, 924 F.2d at 700. The court seemed to conclude that a provider with an assignment of benefits (even if not enforceable) had a colorable claim to receive benefits and was therefore a beneficiary with standing to sue. The court did not consider whether a provider designated by a plan participant to receive payment for services would entitle that provider to receive all the plan notices, protections, and procedures required by ERISA.

The Court, in its previous order, focused its standing assessment on the notion that OSF had received a "benefit," by way of direct payment from the Plan, but did not focus on whether or not OSF was the recipient of a valid assignment from the Plan participant or the Plan itself. *Id.* at 4–5. Based on the Court's initial interpretation of the case law and the broad language of the statutory text, the Court concluded that OSF met the "low threshold" for statutory coverage[1] as a beneficiary because it had received payment for a portion of the services it rendered to R.M.W. However, OSF's briefing on this motion to reconsider alerted the Court to case law that narrows—rather than broadens, as OSF suggests—the scope of who or what qualifies as an ERISA beneficiary.

In *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253 (2d Cir. 2015), the Second Circuit examined who qualifies as a beneficiary under ERISA. In that case, Rojas was an in-network medical provider who submitted questionable reimbursement claims for procedures to Cigna, his patients' insurer. *Rojas*, 793 F.3d at 254–55. Upon review of the claims, Cigna notified Rojas that it was terminating him as a network provider. Rojas sued Cigna under ERISA's anti-retaliation clause, claiming that he was a beneficiary under the statute under two theories: (1) the Cigna benefit plan contained a section allowing for direct payment to providers for covered services, making Rojas what he deemed a "plan-designated beneficiary" and (2) Rojas' patients signed contracts that assigned to Rojas the rights to payment for their services, making him a "participant-designated beneficiary." *Id.* at 256–57. The Second Circuit concluded Rojas could "benefit" from the plan in some general sense—i.e. by receiving payment for his services—but

---

[1] The Court notes the Seventh Circuit's disfavor of the use of the phrase "statutory standing" and will heretofore use the term "statutory coverage" to determine whether the statute provides a right of action to OSF as a beneficiary. *Penn. Chiropractic Ass'n v. Independence Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 928 (7th Cir. 2015) (evaluating whether plaintiffs' claim falls within ERISA's zone of interests in light of *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014)).

6

that the convenience clause providing direct payment to providers did not confer beneficiary status on the provider. *Id.* at 258. ERISA's definition of "beneficiary" was not broad enough in scope to encompass medical providers—rather, it held that beneficiary status should be limited to individuals, such as a spouse or child, who held equal rights to the tangible goods and services guaranteed by a plan, not a "right to payment for medical services rendered." *Id.* at 257*; see also DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868, 875–76 (9th Cir. 2017); *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir. 2001) ("The fact that plaintiff may be entitled to payment from defendants as a result of her clients' participation in an employee plan does not make her a beneficiary for the purpose of ERISA standing."). The court further noted, in regard to the second theory, that a patient's assignment of rights to the provider is limited to those rights that are expressly assigned and derivative of the patient's own rights. *See id.*

The Seventh Circuit adopted the reasoning in *Rojas* to conclude similarly that medical service providers were not necessarily beneficiaries under ERISA. *Penn. Chiropractic Ass'n v. Independence Hosp. Indem. Plan, Inc.*, 802 F.3d 926 (7th Cir. 2015). In *Penn. Chiropractic*, medical providers claimed to be ERISA beneficiaries with the ability to sue insurers based on their status as network providers who were contractually entitled to payment for services rendered to plan participants. *Id.* at 927. The providers sought to exercise procedural appeal rights guaranteed by ERISA to challenge the insurers' decisions on how to structure payment for services. *Id.* at 927–28. The court held that the dispute ultimately concerned only the network contract between the providers and insurers, rather than any ERISA plan, and that the plaintiff providers were not beneficiaries. *Id.* at 930. The Seventh Circuit reiterated the necessity for the

7

designation of beneficiary status to occur by either (1) a valid assignment by a patient or (2) a designation in a plan. *Penn. Chiropractic*, 802 F.3d at 928.

*Rojas* and *Penn. Chiropractic* make clear that a medical provider is generally outside the scope of who or what may become a beneficiary under ERISA. These decisions, and similar ones from other circuits, indicate that a valid assignment executed by a patient could confer to a provider the "derivative" right to payment. *Rojas*, 793 F.3d at 258–59; *DB Healthcare*, 852 F.3d 874. OSF's ability to bring a claim as a beneficiary therefore rests on the existence of an assignment, the scope of that assignment, and the extent to which the rights assigned are the ones the assignee is attempting to exercise. *See DB Healthcare*, 852 F.3d 876–78.

OSF does not rely on the written assignment signed by the patient's guardian upon admission to the hospital, which OSF attached as an exhibit to the complaint. *See* Compl. Ex. C, ECF No. 1-5 at 79. OSF makes clear their stance that "[t]he issue before the Court does not concern any assignment of benefits," Mem. Supp. Mot. Reconsider 12. Instead, OSF argues that the Plan's convenience clause allowing direct payments to providers and its receipt of payment created an assignment and made it a beneficiary. Pl.'s Mem. Obj. Def.'s Mot. Dismiss 5. The Court concludes that the Plan's generic commitment to direct payment to providers is not sufficient to assign R.M.W.'s appeal rights to OSF or otherwise make it an ERISA beneficiary. *See Rojas*, 793 F.3d at 258 (offering direct payment "as a convenience for its insureds, itself, and its providers" was not a "guarantee of direct payment" such that provider plaintiff was entitled to beneficiary status); *Ward*, 261 F.3d at 627 ("The fact that plaintiff may be entitled to payment from defendants as a result of her clients' participation in an employee plan does not make her a beneficiary for the purpose of ERISA standing."). Based on the arguments before the Court,

OSF has not established that it is a beneficiary and therefore is not entitled to bring suit under ERISA.

## CONCLUSION

Accordingly, OSF's Motion to Reconsider, ECF No. 15, is DENIED.

Entered May 3, 2017.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE